Juan Enrique Cintron-Caraballo
# 14955-069
FCC- USP Coleman
POBX 1033
Coleman, FL  33521-1033

No telephone/fax available

Petitioner,pro se.

RECEIVED & FILED
05 NOV 28 PM 4: 39
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

### UNITED STATES DISTRICT COURT

### JUDICIAL DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondent, ) | |
| ) | CV Case No: |
| v. ) | Case No:97-CR-076-20(DRD) |
| ) | |
| JUAN ENRIQUE CINTRON-CARABALLO, ) | |
| Petitioner. ) | |
| ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO VACATE, SET ASIDE,OR CORRECT SENTENCE PURSUANT TO 28 USC 2255.

I. JURISDICTION

Pursuant to 28 USC 2255, jurisdiction to render decisions on motions to vacate, set aside or correct sentence is retained by the United States District Court of original jurisdiction. In the instant case that jurisdiction is retained by the United States District Court- Judicial District of Puerto Rico.

II.  HISTORY OF THE CASE

JUAN ENRIQUE CINTRON-CARABALLO, hereafter referred to as Petitioner; was indicted for one count of 21 USC 846, Conspiracy

( 1 )

MEMORANDUM OF POINTS/AUTHORITIES

## TABLE OF CONTENTS

I.  JURISDICTION                          pg    1

TABLE OF CONTENTS                         pg    i

CASES CITED                               pg    ii

II.  HISTORY OF THE CASE                  pg    1

III. STATEMENT OF THE FACTS              pg    3

IV SPECIFIC CLAIMS

    INEFFECTIVE ASSISTANCE OF COUNSEL     pg    5
    AT TRIAL

    INEFFECTIVE ASSISTANCE OF COUNSEL     pg    19
    ON DIRECT APPEAL

    INEFFECTIVE ASSISTANCE OF COUNSEL     pg    25
    ON PETITION  TO SUPREME COURT

    UNAUTHORIZED MOTION UNDER 28 USC 2255   pg    28

    CONSTITUTIONAL RIGHT TO RELIEF UNDER    pg    31
    "BOOKER" AND "BLAKELY"

CONCLUSION                                pg    37

CERTIFICATE OF SERVICE                    pg    39

EXHIBIT   A- Denial of Petition for Writ of Certiorari

EXHIBIT   B- Declaration of Petitioner CINTRON-CARABALLO

EXHIBIT   C- Not used at this time.

EXHIBIT   D-"Affirmation" of counsel RAFAEL ANGLADA-LOPEZ

EXHIBIT   E-"Unauthorized"motion under 28 USC 2255

EXHIBIT   F-Petitioners motion reference Exhibit (E)

CASES CITED

BLAKELY V WASHINGTON  542 US___ (2004)

STRICKLAND V WASHINGTON 466 US 668 (1984)

SAYER V ANDERSON 238 F 3d 631 (5th Cir 2001)

WIGGINS V SMITH  539 US 520;123 SCt 2527 (2003)

UNITED STATES V WILLIAM SOTO-BENIQUEZ 356 F 3d 1(1st Cir 2003)

APPRENDI V NEW JERSEY  530 US 466 (2000)

UNITED STATES V LOUGHERTY 908 F 2d 1014 (DC Cir 1990)

#02-10054 District of Massachusetts- June 18, 2005

UNITED STATES V BOOKER  543 US___ (2005)

IN RE WINSHIP  397 US 358 (1970)

GRIFFITH V KENTUCKY  479 US 314; 107 SCt 708 (1987)

UNITED STATES V MARTINEZ  407 F 3d 1170/1173-4 (11th Cir 2005)

DODD V UNITED STATES #04-5286, 5th Cir June 2005.

RICHARDSON V UNITED STATES  526 US 813 (1999)

YATES V AIKENS  44 US 211 (1988)

( ii )

SCHIRO V SUMMERLIN  124 SCt 2519 (2004)

RING V ARIZONA  536 US 610 (2002)

TEAGUE V LANE  489 US 288 (1989)

118 Harv L. Rev 1642; "Rethinking Retroactivity" March 2005

IVAN V CITY OF NEW YORK  407 US 203 (1972)

YATES V EVATS  500 US 391 (1991)

SANDSTROM V MONTANA  442 US 510 (1979)

JACKSON V VIRGINIA  443 US 307 (1979)

TYLER V CAIN  533 US 668

UNITED STATES V GARCIA  480 F 3d 986 (9th Cir 1994)

UNITED STATES V STINSON  30 F 3d 121 (11th Cir 1994)

with intent to distribute more than five kilograms of cocaine,
more than five kilograms of cocaine base, more than five
kilograms of heroin and more than one hundred kilograms of
marijuana in violation of 21 USC 841(a)(1), in an alleged drug
conspiracy beginning in January 1990 and ending on or about
March 7, 1994. The original twenty-two(22) defendants were
divided into two groups of eleven defendants each. The group
containing the Petitioner began trial in December 1998.

Trial proceeded from December 28, 1998 to June 25,1999;
a total of eighty-six days of jury trial. Petitioner was found
guilty of Count Two- Conspiracy to violate 21 USC 841(21USC846).

Sentencing occurred on March 9, 2000. Petitioner was
sentenced to life imprisonment and a one hundred dollar ($100.-
special assessment. The sentencing court waived any fine due
to Petitioner's verified inability to pay a fine.

Direct Appeal was filed before the First Circuit Court
of Appeals on March 15, 2002. Case Number 00-1548. Oral argument
was heard on September 8, 2003 and the decision of the Court
was published on November 20,2003 and is cited at 356 F 3d 1,
(1st Cir 2003). No request for reconsideration or en banc review
was filed by counsel for the Petitioner. Two co-appellants
requested en banc and/or reconsideration, the Petitioner's
counsel did not join that request.

Petition for writ of certiorari was filed on April 21,2004.
This petition was lost/misplaced as counsel for the Petitioner,
RAFAEL ANGLADA-LOPEZ, Puerto Rico Bar # 202508 , placed the

( 2 )

filing in the same postal package as the filing of a separate
and unrelated client.   The petition was refiled and accepted
by the Supreme Court of the United States under docket #04-7014
on October 28, 2004.   Petition for writ of certiorari was denied
on November 29,2004.      Exhibit #

Petitioner filed a 'motion to recall mandate' before the
First Circuit Court of Appeals based on the decision in
BLAKELY v WASHINGTON, 542 US___(2004) in the interim period
when the petition for certiorari was pending.   This motion was
denied on December 10, 2004.

Counsel RAFAEL ANGLADA-LOPEZ, filed an unauthorized motion
citing 28 USC 2255 on June 23, 2005 via electronic filing.
Petitioner immediately filed a motion to the District Court
requesting the Court to reject this improper and unauthorized
filing contrary to the Petitioner's best interests. This motion
was dated July 5, 2005.       Exhibit #

Petitioner now submits this timely motion under 28 USC
2255; to vacate, set aside or correct his sentence.


III. STATEMENT OF THE FACTS

Government counsel presented this case as one overarching
drug conspiracy which alleged extended from January 1990 until
on/about March 7, 1994.   Twenty-two defendants were indicted,
the first eleven to go to trial were in the governments' opinion
the 'major players'.

All defendants were charged with conspiracy to violate
21 USC 841(a)(1)/(21 USC 846).   Two defendants were charged

( 3 )

with Continuing Criminal Enterprise- 21 USC 848 (a) and (b).
Petitioner was charged only with the conspiracy count.

The governments case in chief relied almost entirely on
the testimony of cooperating co-defendants/informants
VICTOR NEGRON MALDONADO: RAMON CESARIO-SOTO and LUIS TORRENS
ALICIA.  JUAN ANTONIO RODRIGUEZ-LOPEZ cooperated and testified
before the Grand Jury but was later indicted when it was
determined that he had perjured himself about his presence at
a homicide.

The focus of the government prosecution was the operation
of six drug points in Bitumul Ward of Hato Rey, San Juan,
Puerto Rico.  The indictment portrayed the Petitioner as
operating the "Street B drug point."

The indictment identified WILLIAM SOTO-BENIQUEZ and
JUAN SOTO-RAMIREZ as the verified leaders of the conspiracy.

The evidence presented against the Petitioner consisted
entirely of the testimony of the cooperating co-defendants turned
informants.  There was absolutely no outside reinforcement of
that testimony by any traditional law enforcement methods such as
drug seizures from the Petitioner, undercover purchases of drugs
from the Petitioner, wiretaps, body-wire tapes of incriminating
statements, surveillance video of illegal acts or forensic
evidence from seized drugs that specifically incriminated the
Petitioner.  The alleged drug sales themselves were minute,
testifed to by the informants as being in five and ten dollar
increments.

( 4 )

Government counsel was repeatedly addressed by the Court
in regards to having failed to timely provide discovery to the
the defense.  This was referred to by the Court as .." another
bump in the road"...  The prosecution was never sanctioned,
nor was any evidence ruled as inadmissible due to these frequent
'irregularities'.

The firearm used as the basis of the sentencing enhancement
against the Petitioner was presented in photograph form, the
'alleged' original having been destroyed prior to trial, contrary
to the Federal Rules of Evidence.

Petitioner did not testify at trial due to the refusal
of his defense counsel, RAFAEL ANGLADA-LOPEZ, to prepare him
to testify and failing to explain to the Petitioner that the
ultimate decision is the sole right of the defendant.

The Petitioner was found guilty of the conspiracy count
without any specific findings by the jury as to drug type and/or
quantity that the Petitioner was determined to be personally
responsible for possessing and/or distributing in furtherance
of the conspiracy.

IV.  SPECIFIC CLAIMS RAISED UNDER 28 USC 2255.

A. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

Petitioner was denied the constitutional right to effective
assistance of counsel at trial in several key areas.  In order
to prevail in a claim of ineffective assistance of counsel (IAC)
the two-pronged test set out in <u>STRICKLAND v WASHINGTON</u>,infra,[1]

_____

1-466 US 668(1984)

( 5 )

must be met.  First, the performance of counsel must be below
an acceptable professional level in comparison with the
attorney's peers.  Secondly, the defendant (Petitioner) must
display that he in fact suffered prejudice in the outcome of
his criminal trial as a result of this poor performance.
Petitioner will display to the Court that he was in fact severely
prejudiced by the poor performance of appointed counsel,
RAFAEL ANGLADA-LOPEZ, PR Bar No.202508, and that an evidentiary
hearing is required to fully document these deficient acts and/or
failures to act, for the review of the District Court as well
that of the First Circuit Court , should that become necessary.

1. DENIAL OF THE RIGHT TO TESTIFY IN VIOLATION OF
THE CONSTITUTION OF THE UNITED STATES.

Counsel RAFAEL ANGLADA-LOPEZ (ANGLADA) failed in his legal
and ethical duties by instructing the Petitioner to not testify
in his own behalf, contrary to his constitutional right to
testify, describe the events in question and give the jury the
opportunity to hear the facts from a source other than those
produced by government counsel.

The right to testify is of paramount importance to the
Petitioner because the case against him was based solely on
the testimony of "cooperating co-defendants" who had obtained
extreme leniency from government counsel in regards to the very
same charged offenses the Petitioner was facing, as well as
numerous others. For example, VICTOR NEGRON MALDONADO admitted
involvement in 19 murders, RAMON CESARIO-SOTO admitted to over

( 6 )

80(eighty) carjackings.  Aside from the questionable testimony

of these career criminals there was no presentation of any

evidence with real substance.

Petitioner was aware that the jury was only being told

the governments version of events and that he very much needed

to testify and informed counsel of that repeatedly.  Petitioner

requested that counsel prepare him to testify and informed counsel

counsel that he MUST testify for two major reasons:

(a) FACTUAL WEAKNESS OF THE GOVERNMENT CASE

The government case against the Petitioner specifically,

was weak in regards to specific acts and relied heavily on the

'cooperating codefendants' simply testifying that the Petitioner

had been present at certain alleged events and that Petitioner

had a personal relationship with persons involved in the drug

trade.  The jury was instructed that similarity of conduct does

not equal "conspiracy". (Preliminary Instructions,Jan/12/99,

pg 8,ln 6-9..."mere similarity of conduct among various people...

does not necessarily establish a proof of the existence of a

conspiracy."

Petitioner's testimony could have reasonably assisted the

jury in making a distinction between "similar conduct" and

conspiracy in regards to himself.

The weakness of the government case is displayed in the

fact that the Petitioner was charged with one count of conspiracy.

There were no other included offenses charged.  This is because

the government could not make an even marginal case of proving

beyond a reasonable doubt that the Petitioner possessed,

( 7 )

transported, sold or otherwise managed the distribution of drugs in any specific time frame.

The record is full of situations where the Petitioner is described as being present at certain locations during alleged events, almost as an afterthought.  Petitioner believed that his testimony could help the jury in its deliberations by permitting the jury to understand that while he knew the other defendants and frequently associated with them, that does not amount to "proof beyond a reasonable doubt" that he was involved in a drug conspiracy.  The jury was instructed on this important point and Petitioner felt his testimony was critical in order to permit the jury to properly and fairly deliberate on this area of the charged offense.  See: Preliminary Instructions, 1/12/99, pg 9,1n 8-11..." a person who has no knowledge of a conspiracy but simply happens to act in a way that furthers... the conspiracy does not thereby become a conspirator."

Petitioner repeatedly insisted that he absolutely must testify and describe the actual facts.  The jury was being given only the governments version of events, and Petitioner believed if the jury heard from him, they would reasonably be convinced that his alleged actions did not meet the specifics of the charged count as it was written.  Petitioner was aware that the jury might have reached a determination that he violated the law by possessing, possibly even selling illicit drugs.  That determination would still fall short of the requirements of the conspiracy count and the jury would have had two options:

(1) ask the Court if the defendant could be found guilty of a
LESSER offense, or (2) follow the law and reach a finding that
the Petitioner/defendant did not in fact violate the charged
count as written, thus a NOT GUILTY finding would have been
appropriate.

In order for the jury to make this distinction between
what was alleged by the government and what was fact required
that the Petitioner testify on his own behalf and let the jury
see and hear it from him in his own words.  The need to testify
became even more important when the governments 'star witness',
NEGRON-MALDONADO was cross-examined by Petitioners trial counsel.
See: Trial Transcript, 2/10/99, pg 2-21.  Trial counsels cross-
examination amounted to a brief lecture on the Sentencing
Guidelines and how NEGRON-MALDONADO'S sentence would be reduced.
None of the government witnesses' testimony was confronted in
any way.  Petitioner desperately needed to correct the record
and give the jury a different perspective of the events and
give them something to actually deliberate.  Trial counsel
actively prevented this testimony and the Petitioner was severely
prejudiced.

### (b) PETITIONER WAS THE BEST WITNESS AVAILABLE

The Petitioner was the best witness available who could
assist the jury in distinguishing between fact and fiction in
the government presentation.  Government witnesses, who were
in fact codefendants turned "cooperating witnesses/informants",
repeatedly testified that the Petitioner was an active member

( 9 )

in the charged conspiracy.  The government case theory would be found lacking in substance if it had been compared with the Petitioner describing what his actual actions were and how they differed from the government description of events.

SAYRE v ANDERSON, 238 F 3d 631 (5thCir 2001) gives some guidance as to what obstacles the Petitioner must overcome to display that trial counsels' denial of the right to testify has severely prejudiced the Petitioner and how his testimony would have substantially changed the outcome.  The questions which will later be raised by government counsel as to 'tactics' and 'strategy' will be addressed as well.

To raise a valid claim the Petitioner must offer the substance of the testimony he would have provided.  Petitioner offers the Court the following to display that his testimony would have reasonably effected the jurys' deliberations:

- **Counter-argument to the testimony of 'cooperating witness VICTOR NEGRON-MALDONADO.**    The trial transcripts are full of areas in which the testimony of MALDONADO was inaccurate in his depiction of events as to their time and/or location and several events are simply fiction.  These inaccuracies were provided in order to place unrelated events into the time frame covered by the charged conspiracy count or to involve persons unrelated to the conspiracy into the overt acts alleged in the conspiracy.  MALDONADO needed to testify in this manner in order to fulfill his plea  agreement with government counsel by being "effective" on the stand.

( 10 )

Petitioner will not impose on the Court by listing each
and every point of contention. This would be time consuming
for the Court and would merely degrade into a "he said,she said"
event with government counsel. Petitioner will offer to the
Court his point that there are substantial areas where MALDONADO
altered his testimony as to time, location and persons present
simply to mold the testimony to the charged conspiracy.
PETITIONER has a reasoned belief that had he testified, as he
greatly desired to , he could have given the jury the true
and accurate details and accomplished several key objectives
with the jury:

(1) MALDONADOS' credibility could have been altered or perhaps
destroyed in the opinion of the jury. Since the government
case in chief relied heavily on this credibility, the outcome
could have possibly been different in regards to the PETITIONER.
(2) The jury would have actually had something to deliberate
upon other than the governments case presentation. Without
the Petitioners testimony there was in actuallity no defense
presentation at all. Character witnesses offered by counsel
do not confront the government case and are not true "defense"
witnesses.
- **Display the government accusation of 'flight' as false.**
The government presentation of testimony by MALDONADO concerning
the allegation that Petitioner was a 'fugitive' from justice
was absolutely false. Petitioner instructed his trial counsel
that he needed to testify to that point and prevent the jury

( 11 )

f

from being tainted by this idea.  "Flight" is presented by the

government to infer a "guilty state of mind" on the part of

a defendant in criminal cases. ..

On January 15,1999, the testimony of MALDONADO began to

move into the area of 'flight to avoid arrest/prosecution' by

the Petitioner.  See: Trial Transcript- 1/15/99, pg 71.  This

continued on January 19, 1999 with trial counsel seeking to

present 'ex parte' information to disprove this claim. (Trial

Transcript, 1/19/99, pg 2)  This is another instance where the

testimony of the Petitioner was critical and would have had

substantial weight with the jury.  The use of 'ex parte'

information would not have been of benefit in displaying  to

the jury that MALDONADO was not being truthful, nor would it

have shown that the government was being disingenuous in trying

to misrepresent a simple change in domicile with full-on fugitive

status.  This information would have been most useful when

presented to the jury by the Petitioner under oath.

Any point where MALDONADO could have been shown to be

untruthful and government counsel could be shown to be willing

to bend the truth to obtain the conviction would have benefitted

the Petitioner.  Additionally, this active opposition to the

'fugitive scenario' would have opened other doors in regards

to revealing that the government "knew or should have known"

that the Petitioner was not a fugitive.  Moving from one

residence to another in a geographically small area such as

( 12 )

f

Puerto Rico cannot be regarded as "fleeing" to the continental
United States or perhaps another country. It should have also
led to the discussion/testimony that the government quite
probably possessed "pen registers" (phone traces) and phone
tolls (phone records) that would indicate that Petitioner stayed
in close contact with family and friends and that government
agents knew where he was living because he was <u>not</u> in 'hiding'.
This is not "flight"; and the Petitioner could have clearly
presented this to the jury and thereby shown MALDONADO to have
willingly committed perjury and that government counsel permitted
that perjury. Trial counsel avoided using the best witness
in this situation and instead offered a feeble 'ex parte'
presentation which was not accepted by the Court and most
importantly would have carried no weight with the actual triers
of fact, <u>the jury</u>, as it would have been presented in chambers.

This poor offering of 'ex parte' information cannot possibly
be characterized as a 'trial tactic' or 'strategic' move in
the Petitioners best interests. It is simply incompetence or
perhaps laziness. Reasonably competent counsel would have
followed the logical discovery routes and requested any/all
government phone tolls or pen registers used in this case, those
tools being common in what are described as 'large drug
conspiracies'. Secondly, the Petitioner was the best witness
available and it cannot be effective or tactical or strategic
to refuse to use the best witness.

( 13 )

In the event that government counsel raises the argument
that the acts or rather inactions of trial counsel were either
'tactical or strategic' in nature via an affidavit from counsel;
Petitioner counters that a mere affidavit from trial counsel
would be less than reliable for the Court to make a valid
determination.  An affidavit does not allow the Petitioner to
"complete the record" in regards to conversations that took
place prior to and during trial; nor would it permit Petitioner
to "refresh" counsels memory should it fail in certain critical
areas.

An affidavit is merely a self-serving one sided statement.
A full and complete evidentiary hearing is the only reliable
method to complete the record and allow the Court an accurate
review. See: WIGGINS v SMITH, 539 US 510;123 SCt 2527(2003)

Trial counsel did not make it clear that the decision
to exercise the right to testify belongs to the defendant.
The trial court did not obtain a waiver from the defendant/
Petitioner, thus it reinforces the claim that Petitioner was
not knowingly waiving this constitutional right.  The performance
of counsel was below an acceptable professional standard and
the Petitioner was thereby prejudiced.

The acceptable and reasonable remedy for this failure of
counsel is to set aside this conviction and grant a new trial.

( 14 )

## 2. FAILURE TO UTILIZE WITNESS FELIX MATOS

Criminal trial counsel in service to his client is required
to put forward his best efforts and zealously defend the rights
of the defendant by all legal and ethical means available.
This clearly includes locating and presenting the testimony
of any and all witnesses who can either prove the defendant
is not 'guilty beyond a reasonable doubt' of the charged offense
and/or present testimony which will illustrate that the
government witnesses are being either untruthful or misleading
in their statements under oath.

Petitioner advised trial counsel that he had been contacted
by a potential witness who could give valid first hand testimony
about the true facts surrounding the murder of Heriberto Rivera-
Gonzales, aka "Picu","El Gordo Picu".

FELIX MATOS, who was at that time incarcerated in "SALSALES"
state prison in Puerto Rico, offered to give testimony which
would have been exculpatory in regards to the Petitioner's
alleged participation in pre-meditated murder.  The potential
witness was in fact serving a prison term for the murder of
'Rivera-Gonzales', which he pleaded guilty to in exchange for
a  specific sentence.   There could be no better witness to
testify to the facts surrounding the murder than the person
who had admitted to the act and was serving a prison term for
that crime.   The witness willingly 'offered' to testify, the
witness was readily available and the testimony was credible
as the witness had admitted to the act in open court while making
a guilty plea.

( 15 )

Trial counsel, ANGLADA-LOPEZ, simply refused to utilize the witness or even make a token effort to interview the witness and make a first hand determination of the witness's potential effectiveness on the stand.

This was an important witness despite the fact that the Petitioner was not actually charged with the offense (murder) in the instant case. This is because the government case was heavily laden with "404(b)"evidence[1] and the uncorroborated statements by defendants turned informants. (See governments opening argument) There was very little actual substance to the drug charge, but the government sought to taint the defendant by presenting a multitude of separate, but allegedly related "bad acts". Government witness NEGRON-MALDONADO attempted to place the Petitioner in the location of this specific murder. To the jury, this additional taint of being part of a 'drug murder', would presumably make it easier to believe that the Petitioner was a part of the overall conspiracy, rather than merely associated with some bad people. ( See:Court's opening instruction on 'association versus conspiracy-Jan/12/99 pg 9, ln 8-11:" person who has no knowledge of a conspiracy, but simply acts in a way that furthers...the conspiracy does not thereby become a conspirator."

This tactic of the government was effective. Petitioner was found guilty in a drug trial without any forensic evidence linking him to any drug offenses.

-------------------------------------------------

[1]   Federal Rules of Evidence-Rule 404(b)

To combat this tactic, trial counsel needed the testimony of
a witness such as FELIX MATOS for two very solid reasons:
1. FELIX MATOS could testify that the Petitioner did not
participate in the murder of RIVERA-GONZALES_ displaying that
the government was painting it's case with very broad strokes,
possibly permitting its witnesses to commit perjury, negligently
if not intentionally.

2. FELIX MATOS, could effectively impeach the testimony of any
individual/informant who had stated that Petitioner was involved
in the death of RIVERA-GONZALES. This would severely discredit
important government witnesses such as NEGRON-MALDONADO, and
give the jury something important to deliberate in regards to
this case- the credibility of the government witnesses. This
is a valid issue as the credibility of witnesses is material
to the jury and how much weight it gives to specific testimony.
(See: Direct Appeal-356 F 3d at 44, 173?..." conviction rested
only on co-conspirator testimony, jury was entitled to credit
such testimony and convict him on that basis."

   Would this testimony be material? Assuming that the
governments' presentation on this subject is material, then
it is only logical that the defenses presentation/rebuttal
provided by a witness with firsthand information would be equally
'material'.

   Before government counsel responds to this issue stating
that the 'murder' was not a charged offense and thus not at
issue; it must be reasserted that the actual issue is the actions
or inactions of counsel. Trial counsel was provided information

( 17 )

about a willing, available and credible (by virtue of his plea allocution) witness who could severely discredit important portions of the governments "404(b)" evidence and at the same time put the credibility of government witnesses in question before the jury. The failure of counsel to conduct even a cursory interview of the 'potential' witness clearly indicates that his performance was well below an acceptable professional level.                Affidavit: Exhibit #_____

Was the Petitioner prejudiced by this failure? Absolutely. Once the government has 'rung the bell' and permitted witnesses to implicate the Petitioner in a 'drug murder', the only way to remove that impression from the jury's deliberations of the overall conspiracy is to mount an effective counter to this testimony and discredit the testimony and/or the witness himself. The very best possible witness was available and the Petitioner was prejudiced because counsel did not utilize the witness , permitting the testimony to remain unchallenged. This clearly meets the prejudice prong of STRICKLAND.

An evidentiary hearing is required to permit a full inquiry into why counsel did not utilize a viable, available and credible witness.

In the event the Court determines that the Petitioner is entitled to relief for this failure of counsel, Petitioner respectfully requests that his conviction be set aside and a new trial be granted.

B. INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL

Several of the claims raised on direct appeal have been addressed and answered by the decision of the First Circuit Court of Appeals panel. (356 F 3d 1) Those matters cannot be raised 'de novo' at this time. There are however several matters which were raised in less than an adequate format and must now be raised anew under the umbrella of 'ineffective assistance of counsel'. This is due to the fact that issues not properly raised and thus preserved are often quickly denied as having been waived or even time-barred. This brings the subpar performance of appellate counsel, RAFAEL ANGLADA-LOPEZ, to the forefront again as he failed to raise the following issues as constitutional errors, thus preserving them in a light most favorable to a review by a higher court.

Specifically, appellate counsel failed to raise the constitutional issue of the jury not finding a specific drug amount and type in regards to the Petitioner; appellate counsel did not argue that finding the Petitioner a 'leader/organizer' without a specific jury finding was constitutional error and finally, the enhancement for a firearm, without a jury finding was also constitutional error. All of the above would be arguable under APPRENDI v NEW JERSEY,530 US 466 (2000) as constitutional errors making a valid claim for resentencing if not a new trial. There is no excuse for an experienced defense counsel to not make use of a highly publicized and well argued Supreme Court case which was decided two years prior to the submission of the direct appeal brief.[1]

─────────────────────────

1-See, US v Lougherty,908 F 2d 1014(DC Cir 1990)

This performance was below acceptable levels and severely prejudiced the Petitioner in the following manner;

1. Failure to argue the drug amount and type as consitutional error in violation of APPRENDI v NEW JERSEY, supra.

Appellate counsel raised the issue of the drug quantities and type used to formulate the Petitioner's base offense level in the opening appeal brief, pages 59/60. Counsel argues that there were no valid facts used to make these findings other than the testimony of cooperating co-defendants who received lenient sentences in exchange for their testimony and also benefits from government 'fact bargaining'[1] and 'charge bargaining. This is a good starting point, but it falls short, terribly short when it is known that a valid, on point Supreme Court decision exists which makes it clear that this activity is and was constitutional error. APPRENDI, supra, states very clearly that every single element of the charged offense must be placed before the jury for its determination. It is also now clear and solid law that drug amount and type are in fact elements of any drug offense and must be placed before the jury for their specific findings on those amounts/types in order to obtain a full review and a valid jury finding.

Appellate counsel did not raise the constitutional error, cite valid, recent Supreme Court case law, or adequately argue that the jury never made any determination in regards to drug amount or type in regards to the Petitioner.

Failure to correctly identify the error involved as a

1-See,decision by Chief District Court Judge YOUNG,describing 'common' illegal actions by government counsel- **District of MA**, #02-10054, June 18,2004.

constitutional error and failure to cite appropriate on point
Supreme Court case law allows the issue to be ignored and thus
possibly determined to be 'waived' or 'time barred'. The law
is unforgiving in semantics; failure to use the correct 'buzz
word' can permit an issue to be misinterpretted, thus
misclassified and ultimately ignored in analysis by the reviewing
courts. This is well below an acceptable professional level.

The Petitioner was prejudiced by this failure in what was
a clear and documented 'apprendi error' which would have been
argued and litigated until it was reinforced by BLAKELY v
WASHINGTON 542 US ___ (2004) and then by UNITED STATES v BOOKER,
543 US ___ (2005); must now be raised in this format as an
"ineffective assistance of counsel" claim on a motion under
'2255'. Timely and well argued 'apprendi error' might have
logically resulted in relief; if not it most certainly would
have preserved the argument until BLAKLEY and then BOOKER were
decided to support the issue. This failure alone has severely
prejudiced the Petitioner as he must now argue a well documented
constitutional issue from an "IAC" position.

Thus both prongs of STRICKLAND v WASHINGTON, 466 US 668
(1984) have been met. There was clearly below acceptable
performance and prejudice to the Petitioner has been the result.

The most reasonable remedy to this failure of counsel is
for this Honorable Court to grant the Petitioner a new direct
appeal with appointment of counsel.

2. Failure to argue that the "leader/organizer" enhancement
increased the Petitioner's sentence beyond the maximum permitted
by the jurys findings and that the specifics of that sentence

increase were not found to be true by the jury in violation
of the Sixth Amendment to the Constitution.

This again is an issue that was raised by appellate counsel
on direct appeal, opening appeal brief, pg 56-58; but only in
the context of being contrary to the US Sentencing Guidelines
(USSG) to make such a determination without making very specific
findings and fully documenting those findings upon imposition
of sentence. This is a token effort in light of the available
decision in APPRENDI, which is only a precursor to BLAKELY,
then BOOKER. Aside from that , the argument against sentences
being enhanced beyond the findings of the jury is not a new
concept. Beginning with IN RE WINSHIP, 397 US 358 (1970), the
basis for this argument has been available for some time and
the Sixth Amendment violation would have been the logical
argument for experienced trial and appellate counsel.

To re-state the point, there was no finding by the jury,
nor any admissions by the Petitioner to justify the enhancement
as a "leader/organizer"[1] of the charged conspiracy. The statements
of cooperating codefendants concerning who gave instruction
to various co-conspirators does not reach the level required
for such an enhancement without a jury finding or an admission
of guilt. Similarly, there is not a shred of tangible evidence
to display that Petitioner was taking a disproportionate portion
of the 'alleged' profits, or that Petitioner was living the
lifestyle of a 'drug lord'. The lack of such material would
have prevented the jury from making such a determination "if"
the government or the Court had chosen to place the question

---

1-3B1.1(b) USSG

before the panel for deliberation. This enhancement was contrary
to law and should have been argued as the constitutional violation
it clearly was based on the decisions available, thereby making
a firm foundation for relief at the time of direct appeal, and
certainly available now based on BLAKELY and/or BOOKER.

The performance of counsel was below an acceptable standard
based on the availability of case law pertinent to the instant
case.(See, US v LOUGHERTY, 908 F 2d 1014,(DC Cir 1990)... counsel
being unaware of relevant US Supreme Court decisions.) Prejudice
has occurred as it has now forced the Petitioner to seek what
is clearly available relief under BOOKER via an 'ineffective
assistance of counsel' 2255 claim.

3. Failure to raise the improper firearms enhancement in
violation of the Sixth Amendment.

Appellant counsel failed to properly raise the issue of
the two point sentencing enhancement for the firearm,(USSG-
2D1.1(b)(1), on direct appeal, despite having argued the issue
at sentencing. See: Sentencing Transcript 3/9/2000,pg 34/35.

The firearm was seized from the Petitioner on March 7,
1994 in an unrelated incident which was not charged in this
case. It therefore cannot be reasonably viewed as available
for sentencing consideration as the means of being 'armed during
a drug offense.' This is not however the crucial point in
counsels failure to properly raise and preserve this issue.

In a continuation of the reasonable progression of cases
arising from APPRENDI, supra, the Supreme Court issued
BLAKELY v WASHINGTON, supra, which made it clear that defendants

( 23 )

could not be subjected to enhancement of sentences beyond what
was found by a jury or specifically admitted to by the defendant.
Appellate counsel had ample opportunity to argue this rationale
based on the abundance of case law available which led to the
BLAKELY decision. This progression of legal argument is vividly
displayed in the highly detailed decision by Chief District
Court Judge YOUNG, District of Massachusetts,in anticipation
of the BLAKLEY decision. (See: #02-10054-WGY; June 18,2004.)

Petitioner is not arguing that counsel should have been
able to predict future legal decisions. Petitioner is stating
that appellate counsel had ample opportunity and case law
available to argue the points raised in APPRENDI, BLAKELY and
ultimately BOOKER as his peers have obviously done. The building
blocks were available based on the decision in IN RE WINSHIP,
supra, and the Sixth Amendment rights argument. The Petitioners
case was a solid example of the government improperly obtaining
sentencing for charges disguised as 'enhancements' which were
not placed before the jury for deliberation and a finding 'beyond
a reasonable doubt.'

Having made the original argument at sentencing,reasonably
competent counsel would have continued the preservation of the
improper firearms enhancement on direct appeal. Despite not
being armed with the BLAKELY decision, counsel should have
maintained his position that the 'enhancement' was contrary
to the law, specifically the Sixth Amendment of the Constitution.
Having preserved the issue would have ultimately assisted the
Petitioner in a valid claim under BLAKELY and then BOOKER.

( 24 )

The poor performance of counsel was not adequate in comparison with his peers and the Petitioner has been severely prejudiced as his sentence has been effectively raised from a sentence of a term of years based only on the jury findings into a sentence of 'life' when the unconstitutional enhancments and unlawful drug amount/type are improperly applied.

This matter should have been properly reviewed before an appellate panel on direct appeal.  Petitioner requests that he be granted a new direct appeal as relief on this issue.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES SUPREME COURT.

The petition for writ of certiorari was an example of what can only be described as 'going through the motions' by counsel. The petition submitted by counsel consists of five pages with a copy of the First Circuit Court's appeal decision printed from the uscourts.gov/ website and a copy of the order of judgment.

Five pages total, which includes one (1) page total of argument on the issue raised and one full page (page 5) in which counsel RAFAEL ANGLADA-LOPEZ cites that "Raising losing issues in good faith is a legitimate function of the appellate attorney". This accounts for the 'substance' of the filing.  The remaining pages are an overfluffed jurisdictional statement and citations of opinions.

One page total does not and cannot adequately address the issues raised in what the appellate panel described as "This

massive drug conspiracy case...(involving a )six month trial..."
356 F 3d,1 (Ist Cir 2003) at pg 13. This sham submission was
the work product of the very same counsel who represented the
Petitioner at trial and had first hand knowledge of every detail
of the case, to include having listened to six months of
testimony and who allegedly reviewed every piece of government
discovery.

    The issue raised was a valid issue as the trial court
repeatedly overlooked and excused government counsels refusal
to comply with the Federal Rules of Evidence and the Federal
Rules of Criminal Procedure. Aside from that positive, appellate
counsel still failed to raise the "APPRENDI" issues for what
they actually are- denials of constitutional rights and grounds
for review by the Supreme Court of the United States. The trial
court accepting the drug amounts/types in the indictment and
again in the Pre-Sentencing Report without a special jury verdict
form indicating that the JURY found the Petitioner responsible
for a specific amount and type of drug denied the Petitioner
the full benefits of trial by jury. This point is relatively
uncontested as the appeal decision clearly describes that the
jury was only required to make a finding based on a measurable
amount of drugs.See: 356 F 3d at 45/46 .

    Appellate counsel does not raise the drug amount issue
as a constitutional claim despite the fact that APPRENDI v NEW
JERSEY, supra, was decided well before the Petitioners direct
appeal and petition for writ of certiorari was submitted.

( 26 )

Additionally, the sentencing issues in regards to enhancement for the firearm was not raised as an error based on APPRENDI. This is also true for the enhancement for 'leadership', which combined with the drug amount and firearm enhancements moved the Petitioner from a term of years to 'life' imprisonment.

The strong constitutional argument of APPRENDI was available well in advance of the petition for writ of certiorari and appellate counsel simply failed to make a valid argument which is now seen to have been "re-affirmed" by the Supreme Court in UNITED STATES v BOOKER, supra.

Failure of appellate counsel to point out what are clearly constitutional issues have caused the Petitioner to be prejudiced and resulted in what is a decidedly uphill battle for relief.

Additionally, BLAKELY v WASHINGTON, supra, was decided by the Supreme Court in June 2004. This case made it crystal clear that 'enhancements' such as for 'leadership', 'firearms' along with 'drug amount determinations' not found by the jury or admitted to by the defendant is a Sixth Amendment violation. Counsel had ample opportunity to supplement or amend the petition based on "new law' directly affecting his client. (See: GRIFFITH v Kentucky, 479 US 314 (1987).[1]        No supplement or request to supplement was submitted.

The final example of subpar performance by counsel can be reviewed in the facts surrounding the submission of the petition for writ. In an attempt to "save operating funds", appellate counsel submitted the Petitioners Supreme Court filing

1- 107 SCt 708,US v Martinez 407 F 3d 1170,1173/4(11th Cir 4/05)

( 27 )

with the filing of another client, completely unrelated to the case at hand. This displays the casual attitude and lack of concern counsel held for his legal work product upon which the Petitioners very freedom, his 'liberty interest', depended on.

The error was corrected, but only with the grace and charity of the Clerk of the Supreme Court permitting another filing. Should the matter not be corrected by a 'new' filing, the Petitioner would have been time barred from making any record at all in the Supreme Court.      Exhibit #

Counsel's performance was far below an acceptable professional level for his failure to clearly identify errors with constitutional implications in the Petitioners case to the Supreme Court and this has severely prejudiced the Petitioner

Petitioner respectfully requests relief from the Court to correct this ineffectiveness of counsel.


D. IMPROPER/UNAUTHORIZED FILING OF A MOTION UNDER 28 USC 2255 IN ORDER TO HINDER OR PREVENT AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM BY THE PETITIONER.

The final act of ineffective assistance of counsel is so glaring and so definitively unprofessional that standing alone it encourages this Honorable Court to conduct an evidentiary hearing to determine counsel's motives and intentions in making such a filing.

On June 23, 2005, counsel RAFAEL ANGLADA-LOPEZ filed electronically a motion under 28 USC 2255 in the district court. Petitioner hereby states and re-affirms in the attached motion /

( 28 )

declaration, that he did not authorize or permit counsel to file this motion. See (Exhibit#    ), Petitioners' motion requesting the Court to reject the described motion.

Aside from the fact that Petitioner did not authorize or solicit this action from counsel; it is absolutely contrary to the Petitioners' best interests and planned course of action. In June 2005 Petitioner contacted counsel and requested that certain documents be provided for use in a 'pro se' filing under 28 USC 2255. The bulk of this filing was to be a claim of ineffective assistance of counsel (IAC). Petitioner would not have hired or otherwise permitted the same counsel named as being "grossly ineffective" to make the 2255 filing.

Secondly, and most obvious to even the casual reader of legal filings, the submission is a "sham" offering. The entire motion entails one and one third pages total from heading to certification of service. There is no memorandum of points/ authorities or argument of any kind. The two paragraphs presented merely list BLAKELY v WASHINGTON, supra, and DODD v UNITED STATES, infra; without any clarification of why they are presented or how they relate to the case of the Petitioner. This filing can only be described as a fraud upon the Court, as well as the Petitioner and an embarrassment to the legal profession.

Petitioner has a reasoned belief that this "sham" filing was undertaken to expend the Petitioners' one opportunity to file a motion under 28 USC 2255 and thus prevent the claim of

( 29 )

ineffective assistance of counsel from being raised and an
evidentiary hearing convened.  This is a self-serving action
aimed to take advantage of a 'client' who counsel is well aware
has a minimal education, a significant learning disorder and
is not fluent in written or spoken English, the language of
the Courts of the United States.  This action alone requires
a full inquiry before the Court with counsel ANGLADA-LOPEZ
appearing under oath.

An evidentiary hearing would also be an excellent
opportunity to inquire into counsels' other unprofessional
actions, such as attempting to date the Petitioners' wife. Sworn
affidavit and testimony available.

This final action clearly displays that counsel has not
acted in the best interests of his client as required by law
and the ethics of his chosen profession.

The unauthorized filing under 28 USC 2255 is clearly
deficient and grossly ineffective and if permitted to remain
as a 'valid' filing would severely prejudice the Petitioner.
Petitioner respectfully requests an evidentiary hearing on this
issue.

E. PETITIONER HAS A CONSTITUTIONAL RIGHT TO RELIEF
BASED ON UNITED STATES v BOOKER,543 US____ (2005).

Petitioner has displayed to the Court what are valid claims
of the violation of the Sixth Amendment right to 'trial by jury'
in the areas of his sentencing in regards to (1) drug amount/type
(2) leadership/organizer; and (3) use of firearms. These claims
were originally raised and thus preserved at sentencing.
Appellate counsel again raised the issues of drug amount/type
and use of firearms on direct appeal, despite not describing
them as the clear constitutional violations that they are.
Petitioner preserved these claims in a pro se motion to recall
mandate filed in the appeals court. This motion was denied by
the First Circuit Court of Appeals on December 10, 2004.
Petitioner has again raised and preserved the issues in the
instant motion under 28 USC 2255 which was created specifically
for this very purpose.

The current argument in the courts is based on (1) Is BOOKER
retroactive and available to those persons who are beyond direct
appeal, specifically, collateral review? And (2) If the courts
make the provisions of BOOKER retroactive at a later date, such
as the ruling in DODD v UNITED STATES,#04-5286,5th Circuit/June
2005, and how it relates to RICHARDSON v UNITED STATES,526 US
813 (1999); how will that effect persons such as the Petitioner
who will have expended his 2255 filing or be time barred for
not raising it on collateral attack?

Petitioner makes the following arguments to preserve the

( 31 )

issues and to obtain a favorable review by the District Court
or the First Circuit Court of Appeals, should that review be
necessary.

    1.   IS UNITED STATES v BOOKER RETROACTIVE?

    Based on the principles enumerated in prior decisions such as
YATES v AIKENS, 44 US 211 (1988), BLAKELY v WASHINGTON, 542 US___
(2004) and UNITED STATES v BOOKER,543 US ___ (2005), are
retroactively applicable to cases on collateral review.  This
progression of decisions by the United States Supreme Court has
recently been solidified by DODD v UNITED STATES, 545 US___
(6/20/2005).

    Petitioner has previously illustrated in the instant motion
that his issues under the Sixth Amendment right to jury trial were
preserved at sentencing.  The issues were argued in the arena of
being contrary to the USSG Guidelines requirements that the
sentencing judge make specific findings about the drug quantity,
leadership role and firearms use prior to imposing the "enhancements"
to sentencing on those points which were not found by the jury
nor admitted to by the Petitioner.  Poorly argued or not, they
were raised and thus preserved.

    The failures to properly raise the issues on direct appeal,
and describe them as the constitutional violations that they were
is described in detail in this filing.  Aside from the failures
of appellate counsel, the issue of drug quantity was again raised
in the context of being contrary to the Sentencing Guidelines.
The appellate panel did however answer the claim under the issue

of "Apprendi error", US v SOTO-BENIQUEZ, 356 F 3d 1,(11th Cir2003)
at 50.."2. Sufficiency of Evidence As To Drug Quantities..."
and also clarifies that the jury instruction clearly took the
determination of drug amount/type in regards to each defendant
away from the jury's deliberations and findings. (356 F 3d at
page 45).."The jury instructions in this case did not make direct
reference to drug amounts or quantity."

Therefore, the issue of the Sixth Amendment denial of jury
trial is well preserved.

The Supreme Court opinion in BOOKER clearly states:
"Accordingly, we reaffirm our holding in 'Apprendi':Any fact (other
than a prior conviction) which is necessary to support a sentence
exceeding the maximum authorized by the facts established by a
guilty plea or a jury verdict must be admitted by the defendant or
proved to a jury beyond a reasonable doubt." Id

As BLAKELY and BOOKER are nothing more than a vindication of
the Sixth Amendment right pre-determined in a prior decision
(APPRENDI) retroactivity should not be an issue.  This principle
was previously recognized in YATES v AIKENS, 484 US 211(1988)-
"When a decision of the United States Supreme Court has merely
'applied' settled precedents (Apprendi) to a new different factual
situation, no real question arises as to whether the later (BLAKELY
and BOOKER) decisions should be applied retroactively; in such
cases, it is a foregone conclusion that the later cases apply to
earlier cases, because the later decision has not altered the rule
in any way." Aikens at 217.

( 33 )

The foundation of BOOKER'S new rule of constitutional law
rests squarely on the shoulders of the 'Apprendi due process
doctrine' and the standards of the Sixth Amendment right to jury
trial and the reasonable doubt standards of IN RE WINSHIP,397 US
358 (1970); therefore, retroactivity should be an issue before the
Court in the Petitioner's instant filing. BOOKER was specifically
declared as applying "both the Sixth Amendment holding and its
remedial interpretation of the sentencing act (retroactive) to
all cases on direct review." That point alone effectively makes
BOOKER retroactive to all cases. The opinion does not specifically
limit the application of retroactivity; it merely opens the door
initially to those on direct review.

2. THE BOOKER AND BLAKELY DECISIONS APPLY RETROACTIVELY
TO CASES IN COLLATERAL REVIEW AS A MATTER OF LAW.

In SCHIRO v SUMMERLIN,124 S Ct 2519 (2004); the Supreme Court
rejected retroactivity of the procedural rule announced in
RING v ARIZONA, 536 US 610 (2002), specifically because the fact
finders were required to use the same "facts beyond a reasonable
doubt standard" as the jury is required to use. In a pre-BOOKER
fact finding process, a "preponderance of evidence" standard was
applied. This process seriously diminishes the accuracy of the
finding,(See SCHIRO v SUMMERLINE, supra,page 10) and creates an
exemption from the "Teague Rules".(TEAGUE v LANE 489 US 288 (1989)
This point is much more eloquently and thoroughly stated in
"Rethinking Retroactivity", Harvard Law Review, March 2005-
- - - - - - - - - - - - -
118 Harv L. Rev.1642.

( 34 )

Following the Supreme Court's history, retroactivity of the recent BOOKER decision is a given. Based on this inevitability, Petitioner believes that he has properly preserved the issues, and is entitled to relief at the current time or in the relatively near future such as has occurred in similar actions.

The Supreme Court declared in IVAN v CITY OF NEW YORK, 407 US 203 (1972), that IN RE WINSHIP, supra, "must be given complete retroactive effect." IVAN/CITY OF NEW YORK was a direct appeal case just like BOOKER. The Supreme Court's declaration left no doubt that the retroactivity in IVAN/CITY OF NEW YORK applied to all cases final or otherwise. Proof of this is in several habeas cases in which the Supreme Court subsequently applied variations of the IN RE WINSHIP logic.    See: YATES v EVATS, 500 US 391(1991) and how it relates to SANDSTROM v MONTANA,442 US 510 (1979)... due process violation to relieve the state of burden of proving every element beyond a reasonable doubt; and JACKSON v VIRGINIA 443 US 307 (1979) ...applying IN RE WINSHIP principle to insufficiency of evidence standard in a federal habeas case.

Additionally, by applying IN RE WINSHIP type logic to multiple habeas cases, the Supreme Court has arguably 'de facto' applied BOOKER's constitutional rule through these past cases.

BOOKER is also retroactive as the Supreme Court has in numerous holdings held that "IVAN V,407 US at 205, that the 'In Re Winship' type of rule applies retroactively to cases

( 35 )

on collateral review and held in (BOOKER) that it's
"IN RE WINSHIP" rule applies retroactively to cases on collateral
review"Id. TYLER v CAIN 533 US at 668.

This progression of logical thinking has now resulted in
DODD v UNITED STATES,  545 US___(2005) which has retroactively
applied the findings in RICHARDSON v UNITED STATES, 526 US 813
(1999).

The fact that it took the Court six long years to apply
retroactivity to its finding in these related cases makes a
strong argument that the Court will in the near future make
the next step in the findings in BOOKER and BLAKELY and make
them clearly retroactive to those persons who have properly
preserved and argued the issues from the beginning.

3.  "CLARIFYING AMENDMENTS TO THE US SENTENCING GUIDELINES
HAVE BEEN MADE AND ARE THUS GIVEN RETROACTIVE EFFECT.

Finally, because the finding in BOOKER clarifies the United
States Sentencing Guidelines and effectively amends those
'guidelines', the rules are now to be applied retroactively
as is well established per UNITED STATES v GARCIA, 480 F 3d
986(9th Cir 1994)...this ruling confirms that amendments of
the federal sentencing guidelines which are clarifying rather
than substantive may be given retroactive effect. Also,
US v STINSON, 30 F 3d 121(11th Cir 1994). This is verifed by
the Supreme Court in BOOKER... "are remedial interpretation
of the sentencing act" and advisory as "Congress would have
intended" had it known its mandatory provision violated the
Sixth Amendment right to jury trial. Id.

Therefore, based on the facts presented; the Petitioner is clearly entitled to relief under the provisions of BOOKER and BLAKELY as there is no defendable opposition that he was denied the Sixth Amendment right to jury trial in regards to: (1) drug quantity/drug type,(2) leadership role and (3) use of a firearm.

The resultant sentencing enhancements for the above is contrary to the provisions of the Constitution and arguably retroactive based on current case law and the Petitioner having properly and repeatedly attempted to raise these issues to the Court.

In light of the denial of the constitutional right to trial by jury on the areas of 'enhancement', Petitioner requests that his sentence be modified to reflect the removal of the unconstitutional enhancements for drug amount/type, leadership role and use of firearms with consideration for a sentence of 'time served'.

## CONCLUSION

Petitioner has presented claims which,found in his favor, would require a new trial or a new sentence based on the removal of unconstitutional enhancements.  The claims are not vague or speculative and are backed by sworn affidavits.  Therefore, should government counsel present affidavits in opposition, the matter would still be in dispute and require a hearing to complete the record and resolve according to current case law.

Government counsel cannot make the hollow claim of

( 37 )

"overwhelming evidence" as the record is very clear that the entire case presented against the Petitioner was comprised solely of the testimony of cooperating codefendants who received extreme leniency from the government in exchange for their testimony. There is no physical evidence on the record which supports the 'cooperating witnesses' testimony. For example, there is no videotape, undercover officer recordings, 'bodywire' recordings, wiretap recordings, fingerprint evidence from drug seizures, ballistic evidence or admissions from the Petitioner which would permit the government to make a claim in regards to the Petitioner of "overwhelming evidence".

The unconstitutional enhancement claims are backed by new rulings of the Supreme Court of the United States. This may be strengthened by new cases before the Court— United States v Recuenco and State v Hughes, both granted certiorari in October 2005 and arguing the issue of "structural error".

The Petitioner respectfully requests that the relief described for each claim be granted; or at the very minimum an evidentiary hearing be granted to complete the record in the interest of justice.

I, Juan Enrique Cintron-Caraballo, affirm that the foregoing is true and correct under penalty of perjury.

Respectfully submitted,

*Juan Cintron*          Nov/15/2005

Juan Enrique Cintron-Caraballo
Petitioner, pro se

CERTIFICATE OF SERVICE

I, JUAN ENRIQUE CINTRON-CARABALLO, affirm that on the date indicated below, placed the following items in the Legal Mail receptacle at USP Coleman: Original and two copies of the "motion and memorandum of points/authorities in support of petition under 28 USC 2255"with exhibits to the US District Court at the address below.  "Motion for appointment of counsel" was also provided to the District Court.

A courtesy copy of the motion under 28 USC 2255 was provided to the US Attorneys Office/San Juan, Puerto Rico.

Additionally, an additional face sheet for the motion under 28 USC 2255 and motion for appointment of counsel was provided with a stamped/addressed envelope and a note requesting a date stamped/conformed copy for the Petitioners records.

All mailings to the Court and US Attorneys Office were made via prepaid US Mail.

Respectfully submitted,

_Juan Enrique Cintron Caraballo_ Nov/ 15/2005

Juan Enrique Cintron Caraballo
            Petitioner pro se.

FCC- USP Coleman    USP
POBX 1033
Coleman, FL 33521-1033

Clerk of the Court
US District Court
District of Puerto Rico
Torre Chardon
350 Carlos Chardon St.
San Juan , Puerto Rico   00918

7004 1160 0003 9799 4824

and,

United States Attorneys Office
Torre Chardon
350 Carlos Chardon St.
Suite 1201
San Juan, Puerto Rico   00918

( 39 )

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

November 29, 2004

Mr. Rafael Anglada-Lopez
PO Box 194886
San Juan, PR  00919

Re:  Juan Enrique Cintron-Caraballo
     v. United States
     No. 04-7014

Dear Mr. Anglada-Lopez:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

**William K. Suter**, Clerk

Exhibit # **A**
(1) page

Juan Enrique Cintron-Caraballo
# 14955-069
FCC- USP Coleman
POBX 1033
Coleman, FL  33521-1033

No telephone/fax available

Petitioner,pro se.

## UNITED STATES DISTRICT COURT

## JUDICIAL DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Respondent,<br><br>v.<br><br>JUAN ENRIQUE CINTRON-CARABALLO,<br>    Petitioner. | ) <br> ) <br> ) CV Case No:<br> ) <br> )    Case No:97-CR-076-20(DRD)<br> ) <br> ) <br> ) <br> ) |

### DECLARATION OF PETITIONER JUAN ENRIQUE CINTRON-CARABALLO

I, Juan Enrique Cintron-Caraballo, do declare and say as follows:

1.  I am the Petitioner in the above titled action.

2.  I am making this declaration in support of my petition filed pursuant to 28 USC 2255 to set aside my conviction and sentence in Case Number 97-CR-076-20(DRD).

3.  I make this declaration to clarify my claims on two points; (1) that I repeatedly informed my trial counsel to permit me to testify on my own behalf, and (2) that I provided my trial counsel with the name and location of a witness who offered

( 1 )

Exhibit # B
(3) pages

to testify and counsel did not interview or contact the witness.

4. I was convicted in the above titled case based entirely upon
the testimony of codefendants turned cooperating witnesses.

5. This testimony went unchallenged due to my trial counsel
refusing to prepare me to testify, and refusing my numerous
requests to testify and correct the misleading statements of
the government witnesses.

6. I say "requests" because at the time of trial I was completely
unaware that the "right to testify" was mine alone to assert
or to waive. My appointed trial counsel, RAFAEL ANGLADA-LOPEZ,
never explained that the decision to testify or not, was mine.

7. Counsel did not give a definitive reason as to why I would
not testify or why he would not prepare me to testify if the
situation dictated.

8. The Court did not request a waiver from me in regards to
my waiving the right to testify either in open court or in any
written document.

9. I affirm that I very much wanted to testify on my own behalf.
I truly believed that my testimony was essential to my defense.

10. I believe that my testimony would have convinced the jury
that I was not guilty of the conspiracy count as written, and
that my situation was one of 'association' rather than conspiracy .

11. I did not make my desire to testify known to the Court as
I did not know that I was permitted to address the Court other
than thru counsel.

12. In regards to the witness that my trial counsel did not
utilize, I declare that I personally gave RAFAEL ANGLADA-LOPEZ,

( 2 )

the full name and location of potential witness FELIX MATOS.

13. FELIX MATOS offered to give important testimony which would
have impeached the star witness NEGRON-MALDONADO concerning
a homicide the government witness had testified about at trial.

14. Trial counsel ANGLADA-LOPEZ did not interview or contact
the potential witness.

15. Counsel did not utilize an investigator to interview or
contact the witness and thus, could not have possibly made an
educated and reliable decision as to the witnesses' value.

16. I believe that my trial counsel took advantage of my being
unaware of my rights and unaware that I could have addressed
the Court directly about my desire to testify and that I had
a potential witness which was not being utilized. I have a
reasoned belief that this ineffectiveness resulted in my
conviction at trial.

  I, Juan Enrique Cintron-Caraballo, affirm that the foregoing
is true and correct under penalty of perjury.

_____
Juan Enrique Cintron-Caraballo
Executed on _____ 9 / 17 /2005 _____
at USP Coleman, FL  33521-1033

EXHIBIT # B

( 3 )

## AFFIRMATION

I, Rafael Anglada-López, of legal age, DOB: 06/04/50, S.S. #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; born in and a resident of the Commonwealth of Puerto Rico, do solemnly affirm the following under penalty of perjury:

1. The undersigned counsel is a licenced counsel of law, in good standing in the Commonwealth of Puerto Rico and the U.S. District Court for the District of Puerto Rico since 1985. This counsel, an active member of the panel for the representation of indigent defendants in the U.S. District Court for the District of Puerto Rico and the U.S. Court of Appeals for the First Circuit, pursuant to the Criminal Justice Act, 18 U.S.C. 3006A, is also admitted in the U.S. District Court for the District of Connecticut, the U.S. Court of Appeals for the First Circuit, the U.S. Court of Appeals for the Eleventh Circuit, and the District of Columbia.

2. The undersigned counsel represented defendant-appellant Juan E. Cintrón-Caraballo (Reg. No. 14955-069, U.S.P. Coleman, FLA.) since March 1997, when he surrendered voluntarily in the U.S. District Court, District Court of Puerto Rico, Cr. No. 97-072(DRD). This representation continued through the defendant-appellant's trial (12/98 - 06/99), his appeal before the U.S. Court of Appeals for the First Circuit, appeal No. 00-1548, and the instant Petition for Writ of Certiorari. The instant Petition, Mandate entered on 12/12/03, Rehearing en banc as to two co-appellants, appeals No. 00-1361 and No. 00-1456, on 2/9/04, was timely mailed to the U.S. Supreme Court on April 21, 2004.

3. The undersigned counsel and his paralegal assistant mailed the Petition for Writ of Certiorari for defendant-petitioner Juan E. Cintrón-Caraballo to the U.S. Supreme Court on April 21, 2004, personally, via Express Mail ER359647566. A copy of the pleading was mailed to the Solicitor General via Express Mail ER359647570 and a copy to defendant-appellant Juan E. Cintrón-Caraballo was mailed to FCI Coleman, FLA., via certified mail article No. 7003 3110 000 8402 9037. Those three mailings were made at the same day and time. Subsequently, a copy was personally served to the U.S. Attorney's Office, District of Puerto Rico.

4. The undersigned counsel certifies that in that same express mail envelope (ER359647566), addressed to the U.S. Supreme Court, another separate pleading as to a different defendant-petitioner, José Rafael Silverio, on Petition for Writ of Certiorari From Judgement Entered on 03/08/04 by the U.S. Court of Appeals for the First Circuit, App. No. 02-2611, was included. As a matter of cost efficiency, this counsel has always sent pleadings of more than one appellant in a same envelope. (The mailing of the instant two pleadings, for appellant-petitioner Juan E. Cintrón-Caraballo and appellant-petitioner José Rafael Silverio, had a cost of $60.00.) CJA cases in the U.S. District Court of Puerto Rico and the U.S. Court of Appeals for the

RAL



Exhibit # ___D___
(2) pages

Affirmation:   Juan E. Cintrón-Caraballo
Petition for Writ of Certiorari

First Circuit make up most of the undersigned counsel's practice, for which normally the Court owes the undersigned counsel more than $100,000 in work done and expenses incurred. At present, the undersigned counsel represents eight defendants in the U.S. District Court, District of Puerto Rico, four (4) of them who are scheduled for trial, one (1) in a 21 U.S.C. 2255 (recently appointed by Senior U.S. District of Puerto Rico Judge Raymond L. Acosta), and seven (7) defendant-appellants before the U.S. Court of Appeals for the First Circuit. (A copy of the Express Mail customer copy of the mailings addressed to the Clerk of the Court, U.S. Supreme Court, and the Solicitor General, and the return receipt card for the mailing of the copy of the pleading sent to the appellant-petitioner is attached.)

5.     The undersigned counsel has learned from this experience. From now on, every envelope sent to the U.S. Supreme Court will only include one appellant or petitioner's pleading at a time.

6.     The undersigned counsel is a solo practitioner and his paralegal assistant and secretary is his wife for 30 years. The instant affirmation was not sent promptly the day that this counsel knew of the missing pleading for appellant-petitioner Juan E. Cintrón-Caraballo because his legal office was affected by a crisis in the family. Right after the death of his wife's mother five weeks ago, she had to also care for her mentally retarded sister and her elderly father. Since August 29, 2004 to the present, her father has been admitted three times into the emergency room of the V.A. Hospital, one admission prompting a hospitalization for five days. Furthermore, the aftermath of hurricane Jeanne, a five day interruption of the electricity supply and a damaged internet telephone line (that is yet to be repaired), affected the work performed. The family situation has been corrected and this counsel understands that it will not continue to interfere with the work at his legal office.

7.     For all the above stated reasons, it is respectfully requested to this Honorable Court, Supreme Court of the United States, to accept the Petition for Writ of Certiorari for appellant-petitioner Juan E. Cintrón-Caraballo, appeal No. 00-1548, U.S. Court of Appeals for the First Circuit, Cr. 97-072(DRD), U.S. District Court, District of Puerto Rico.

Rafael Anglada-López     Esq.
09/27/04

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff** | |
| **v.** | **Cr. 97-076-20(DRD)** |
| **JUAN ENRIQUE CINTRON-CARABALLO**<br>**Defendant-Petitioner** | |

## MOTION TO VACATE, SET ASIDE OR CORRECT CRIMINAL SENTENCE PURSUANT TO 28 U.S.C. 2255, <u>BLAKELY V. WASHINGTON</u> 542 U.S. __ (06/24/2004) AND <u>DODD V. UNITED STATES</u> 545 U.S. __ (06/20/2005)

**TO THE HONORABLE COURT:**

Comes now the Defendant-Petitioner, Juan Enrique Cintrón-Caraballo, by and through the undersigned counsel, and very respectfully states, informs, and prays as follows:

1.    Defendant-Petitioner Juan Enrique Cintrón-Caraballo respectfully moves this Honorable Court, sentencing U.S. District Judge, to vacate, set aside or correct his criminal sentence pursuant to <u>Blakely v. Washington</u> 542 U.S. __ (06/24/2004) and <u>Dodd v. U.S.</u> 545 U.S. __ (06/20/2005).

THEREFORE, for the above stated reasons, the Defendant-Petitioner prays this Honorable Court to vacate, set aside or correct his criminal sentence pursuant to <u>Blakely v. Washington</u> 542 U.S. __ (06/24/2004) and <u>Dodd v. U.S.</u> 545 U.S. __ (06/20/2005), and any other remedy pursuant to law.

1

Exhibit # _E_
(2) pages

I do certify that on this date I electronically filed the foregoing Motion to Vacate, Set Aside or Correct Criminal Sentence Pursuant to 28 U.S.C. 2255, *Blakely v. Washington* 542 U.S. ___ (06/24/2004) and *Dodd V. United States* 545 U.S. ___ (06/20/2005) with the Clerk of the Court, using the CM/ECF system, which will send notification to the United States Attorney's Office, Torre Chardon, 350 Carlos Chardon St., Suite 1201, San Juan, P.R. 00918.

Respectfully submitted, in San Juan, Puerto Rico, today, June 23, 2005.

FOR DEFENDANT-PETITIONER
JUAN ENRIQUE CINTRON-CARABALLO


S/ RAFAEL ANGLADA-LOPEZ
RAFAEL ANGLADA-LOPEZ
U.S.D.C. - P.R. NO. 202508
PO BOX 194886
SAN JUAN, PUERTO RICO 00919
TEL. (787) 250-0917
FAX (787) 765-8679

2

Juan Enrique Cintron-Caraballo
# 14955-069
FCC- USP Coleman
POBX  1033
Coleman, FL 33521-1033

No telephone/fax available
Petitioner, pro se.

## UNITED STATES DISTRICT COURT

## JUDICIAL DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondent, ) | CV Case No: |
| ) | |
| v. ) | Case No: 97-CR-076-20(DRD) |
| ) | |
| JUAN ENRIQUE CINTRON-CARABALLO, ) | |
| Petitioner/Defendant. ) | |
| ) | |

DEFENDANT CINTRON-CARABALLO'S MOTION REQUESTING THE
DISTRICT COURT TO REJECT THE UNAUTHORIZED MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE PER 28 USC
2255, FILED BY TRIAL COUNSEL OR TO PERMIT A REMEDY.

COMES NOW PETITIONER/DEFENDANT JUAN ENRIQUE CINTRON-CARABBLLO,

PRO SE, and states that the following is true and correct under

penalty of perjury:

PETITIONER respectfully requests that this Honorable Court reject

the unauthorized motion under 28 USC 2255 filed by trial counsel,

RAFAEL ANGLADA-LOPEZ, USDC/PR No 202508, for the following valid

and verifiable reasons, or in the alternative permit PETITIONER to

submit his own motion and regard it as an amended filing or whatever

remedy the Court deems appropriate to correct this action.

1. Counsel ANGLADA-LOPEZ  electronically filed a motion under

28 USC 2255 on June 23,2005 under the above numbered case.  This

filing was not authorized, permitted or requested by the PETITIONER.

( 1 )

Exhibit # **F**
(3) pages

2. Counsel ANG_.DA-LOPEZ completed his duti_s as appointed counsel on November 29, 2004 when the petition for certiorari was denied.

3. PETITIONER contacted counsel in June 2005 to request documents in preparation of his 'pro se' filing under 28 USC 2255 which includes a strong 'ineffective assistance of counsel' claim.  This document is in 'rough draft' form and will filed in approximately four-six weeks.

4. PETITIONER has a reasoned belief that counsel filed this motion under 2255 to intentionally deny the PETITIONER the opportunity to raise the IAC claim by expending the one time filing permitted under 28 USC 2255.  The facts in support:

A. The filing (attached) is at best a 'shoddy' piece of legal work, comprising one and one third pages total-heading to certification of service.  No memorandum of points/authorities or argument of any type.

B. The reasons for citing BLAKELY v WASHINGTON, 542 US___ or how DODD v US 545 US____ relates to the PETITIONER is not provided.

C. PETITIONER had previously raised/preserved BLAKELY, in his 'pro se' motion to recall mandate, which was denied by the First Circuit Court on December 10, 2004.

5. It is clear that the motion by counsel was self-serving, detrimental to the PETITIONER and completely unauthorized.

For the above stated reasons, PETITIONER respectfully requests this Court to reject the unauthorized filing or permit PETITIONER to submit his 'pro se' filing as an amended motion under 28 USC 2255 or whatever remedy the Court deems to be in the interest of justice.

(2)

As previously stated, PETITIONER affirms that the above stated facts are true and correct under penalty of perjury.

Respectfully submitted,

_July 5, 2005_
Juan Enrique Cintron-Caraballo
Petitioner/Defendant pro se.


CERTIFICATE OF SERVICE

I, Juan E. Cintron-Caraballo, declare that a true and correct copy of the enclosed ' motion requesting the court to reject unauthorized motion' and exhibits was mailed by prepaid  US Mail to the following interested parties on July 6, 2005 via the 'legal mail' receptacle at USP Coleman, 33521.

_July 5, 2005_
Juan E. Cintron-Caraballo
# 14955-069
FCC- USP Coleman
POBX  1033
Coleman, FL  33521-1033

Clerk of the Court
US District Court
District of Puerto Rico
Torre Chardon
350 Carlos Chardon St.
San Juan, PR  00918

and,

United States Attorney's Office
Torre Chardon
350 Carlos Chardon St.
Suite 1201
San Juan , PR  00918

(3)